The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMMY J. DETRAY and GREGORY S. DETRAY,<br><br>Plaintiffs,<br><br>v.<br><br>AIG INSURANCE COMPANY OF CANADA f/k/a CHARTIS INSURANCE COMPANY OF CANADA d/b/a CHARTIS INSURANCE; NORTHBRIDGE COMMERCIAL INSURANCE CORPORATION; and MULLEN TRUCKING 2005 LTD,<br><br>Defendants. | No. 2:17-cv-0983 RAJ<br><br>ORDER |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. # 34) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 27). Both Motions are opposed. Dkt. ## 36, 38, 51. For the reasons stated below, Defendant's Motion for Summary Judgment (Dkt. # 34) is **DENIED**, and Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 27) is **DENIED.**

### I. BACKGROUND

Plaintiffs Tammy and Gregory DeTray are residents of Thurston County, Washington. Dkt. # 1-2 ¶ 2.1. Plaintiffs owned and operated a pilot car service known as "G&T Crawler Service." Dkt. # 29 Ex. A. Defendant Northbridge General

1

Insurance Corporation ("Northbridge") is a Canadian insurance company. Its principal place of business is in Toronto, Ontario. *Id.* ¶ 2.3.

In 2013, a commercial truck collided with the Skagit River Bridge in Mount Vernon, Washington, and caused it to collapse. Dkt. # 1-2 ¶ 5.1. The truck was guided at the time by a pilot vehicle operated by Plaintiff Tammy DeTray. Dkt. # 15 Ex. A. The truck was owned and operated by Mullen Trucking 2005 Ltd. ("Mullen"), a Canadian company based in Calgary, Alberta. Mullen was insured by Northbridge under a primary insurance policy, Policy No. 2002135 (the "Northbridge Policy"). Dkt. # 28 Ex. C. AIG Insurance Company of Canada ("AIG") also issued a commercial umbrella policy to Mullen (the "AIG Policy"). The AIG Policy provides coverage after the limits of the Northbridge Policy have been exhausted. Dkt. # 37 Ex. 1.

The State of Washington, Qwest Corporation, and three other individuals brought lawsuits against Mullen, Mrs. DeTray, and others in Skagit County Superior Court, alleging that Mrs. DeTray negligently caused the bridge to collapse (the "Underlying Lawsuits"). Dkt. # 45. Mullen then filed cross-claims against Plaintiffs in these lawsuits. Dkt. # 1-2 ¶ 5.2. The Underlying Lawsuits are still pending. Dkt. # 45. Mrs. DeTray tendered her defense of the lawsuits to Northbridge, requesting defense and indemnity under the Northbridge Policy. *Id.* ¶ 6.1. Northbridge assigned Mrs. DeTray's claim to Senior Claims Technical Specialist Ryan Cobb. Dkt. # 28 Ex. C. Northbridge agreed to defend Mullen but declined Plaintiffs' tender. Dkt. # 28 Ex. E. The letter declining Plaintiffs' tender stated that Mrs. DeTray was not insured under the Northbridge Policy and that she did not qualify as an "additional insured under the CGL, SPF No. 1, or SPF No. 6." The letter also stated that "[b]y Court order, Ms. DeTray was found to be [Mullen's] agent during the transportation of [Mullen's] oversized load. This does not qualify her for coverage under the Policy. The Policy does not include 'agents' as additional or unnamed insureds." Dkt. # 28 Ex. C. Under the Northbridge Policy, Northbridge provides several different coverages. Three parts

2

of the Northbridge policy provide liability insurance: the Standard Automobile Policy ("SPF No. 1"), the Commercial General Liability form ("CGL"), and the Non-Owned Automobiles form ("SPF No. 6"). *Id.*

The SPF No. 1 states:

> The Insurer agrees to indemnify the Insured and, in the same manner and to the same extent as if named herein as the Insured, every other person who with his consent personally drives the automobile, or personally operates any part thereof, against the liability imposed by law upon the insured or upon any such other persons for loss or damage arising from the ownership, use or operation of the automobile and resulting from . . . [damage to property]

SPF No. 1 defines "the automobile" as: "The Described Automobile - an automobile, trailer or semi-trailer specifically described in the Policy or within the description of the insured automobiles set forth therein." Dkt. # 28 Ex. C.

The CGL coverage states that it covers "sums that the Insured becomes legally obligated to pay as 'compensatory damages' because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* "Property Damage" arising directly or indirectly out of the ownership, maintenance, use or entrustment to others of any automobile owned or operated by or on behalf of or rented or loaned to any Insured is excluded from coverage. *Id.* The term "automobile" is defined as "a land motor vehicle, trailer or semitrailer that is required by law to be insured under a contract evidenced by a motor vehicle liability policy, or any vehicle insured under such a contract." *Id.* The CGL form also states who may qualify as an Insured under the coverage. Included in the definition of an Insured are "'volunteer workers' only while performing duties related to the conduct of your business, or your 'employees'. . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." *Id.* An "employee" includes a "leased worker" or a "temporary worker." *Id.*

3

The SPF No. 6 states that the Insurer agrees to indemnify the Insured against liability imposed by law upon the Insured for loss or damage arising from the use or operation of any automobile not owned in whole or in part by or licensed in the name of the Insured, and resulting from bodily injury to or the death of any person or damage to property of others not in the care, custody, or control of the insured. *Id.* The SPF No. 6 also includes additional insureds. Additional Insureds are defined as:

> [E]very partner, officer or employee of the Insured who, with the consent of the owner thereof, personally drives (a) in the business of the Insured stated in Item 3 of the application, any automobile not owned in whole or in part by or licensed in the name of (i) the Insured, (ii) such additional Insured person, or (iii) any person or persons residing in the same dwelling premises as the Insured or such additional insured person or (b) any automobile hired or leased in the name of the Insured except an automobile owned in whole or in part or licensed in the name of such additional insured person.

*Id.*

On April 11, 2017, Northbridge filed a separate lawsuit against Mrs. DeTray in Calgary, Alberta (the "Alberta Lawsuit"). Dkt. # 28 Ex. F. The Originating Application (analogous to a complaint) in the Alberta Lawsuit asked the Alberta Court to issue an order declaring that Northbridge had no obligation to defend or indemnify Mrs. DeTray in the Underlying Lawsuits. Dkt. # 28 Ex. F. Northbridge represents that Mrs. DeTray was properly served and that a copy of the Originating Application was sent to Plaintiffs' attorney in the Underlying Lawsuits. Dkt. # 35. A hearing was held in the Alberta Lawsuit on September 21, 2017. Dkt. # 35 Ex. J. Northbridge also represents that Plaintiffs had notice of the hearing but did not appear. Dkt. # 35 Exs. C-I. The Alberta Court entered judgment on September 29, 2017, finding: (1) the Alberta Court had jurisdiction over the matter and Mrs. DeTray had proper notice of the Alberta Lawsuit in accordance with the law of Alberta and the rules and practices of the Alberta Court; (2) The vehicle operated by Mrs. DeTray was not insured under the relevant insurance policies; (3) Mrs. DeTray was not insured under the relevant policies; and (4)

4

even if Mrs. DeTray was insured under the relevant policies, any duty to defend would be excluded or does not apply. Dkt. # 35 Exs. J, K.

Plaintiffs filed this action in Skagit County Superior Court against AIG, Northbridge, Washington State Department of Transportation, and Mullen on May 11, 2017, shortly after Northbridge filed the Alberta Lawsuit. Dkt. # 1. Defendants then removed the lawsuit to this Court. *Id*. Plaintiffs filed stipulations of dismissal for the Washington State Department of Transportation, Mullen, and AIG. Dkt. ## 26, 64, 75. Plaintiffs seek a declaratory judgment from this Court that Northbridge is obligated to pay in full on behalf of Plaintiffs, that Northbridge handled Plaintiff's insurance claim in bad faith and in violation of the Washington Consumer Protection Act, that Northbridge's policies provided coverage by estoppel, damages, as well as attorney's fees and costs. Dkt. # 1-2. Northbridge filed a Motion for Summary Judgment of Plaintiffs' Complaint of lack of personal jurisdiction, or in the alternative, because Plaintiffs' claims against Northbridge are barred by *res judicata*. Dkt. # 34. Plaintiffs also filed a Motion for Partial Summary Judgment, seeking a declaratory judgment that Northbridge had and has a duty to defend Mrs. DeTray in the Underlying Lawsuits. Dkt. # 27.

**II.  LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to

5

support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

**III. DISCUSSION**

A. Personal Jurisdiction

Plaintiff has the burden of establishing personal jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). "It is well established that where the district court relies solely on affidavits and discovery materials, the plaintiff need only establish a *prima facie* case of jurisdiction." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n.3 (9th Cir. 1993). "Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of federal due process." *Shute v. Carnival*

*Cruise Lines*, 113 Wn. 2d 763, 771, 783 P.2d 78 (1989).  The due process clause grants the court jurisdiction over defendants who have "certain minimum contacts . . . such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be found on either of two theories: general jurisdiction and specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction. *Id.* "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations omitted). As Plaintiffs do not assert that Northbridge is subject to general jurisdiction, the Court will consider whether Northbridge is subject to specific jurisdiction.

The court applies a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum, (2) the plaintiff's claims arise out of the defendant's forum-related activities, and (3) exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The burden then shifts to defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

       *a. Purposeful Availment*

To have purposely availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or

promotes the transaction of business within the forum state. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). Purposeful availment of a forum can occur when an insurer agrees to provide coverage to its insureds within the disputed forum and an insured event results in litigation within that forum. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913-14 (9th Cir. 1990). It is undisputed that the insured event occurred in Washington State and resulted in litigation in Washington State. It is also undisputed that Northbridge agreed to provide coverage to their insureds within the United States and is currently providing defense to Mullen, Plaintiffs' co-defendant in the Underlying Lawsuits. Dkt. # 52 Ex. G. The Court finds that Northbridge purposely availed itself of the privileges and benefits of conducting their business in Washington State by contracting to indemnify and defend claims arising in that forum.

### b. Arising Out Of

The Ninth Circuit has adopted a "but for" analysis to determine whether the claims at issue arose from a defendant's forum-related conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). "[T]he plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities." *Id*. Plaintiffs bring this suit against Northbridge because of Northbridge's alleged breach of promise to Plaintiffs to indemnify and defend them in the Underlying Lawsuits. Setting aside any disputes as to whether Plaintiffs are considered insureds under the Northbridge Policy, Plaintiffs would not have suffered the alleged injury "but for" Northbridge's refusal to defend them.

### c. Exercise of Jurisdiction is Reasonable

As Plaintiffs have satisfied the first two prongs required to establish specific jurisdiction, the burden shifts to Northbridge to make a "compelling case" that exercise of jurisdiction is not reasonable. *Schwarzenegger*, 374 F.3d at 802. There are seven factors a court must consider when determining whether exercise of jurisdiction is

reasonable: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).

Northbridge cites to a series of Tenth Circuit cases in support of their argument that the type of "minimum contacts" in this case are so minimal that due process requires a "more rigorous analysis" of the reasonableness requirement for personal jurisdiction. Northbridge provides no argument or legal authority indicating that this is the law in the Ninth Circuit.

Northbridge offers very little argument in support of their contention that litigation in the disputed forum is not reasonable, choosing to rely on its citations to Tenth Circuit case law. Northbridge's argument appears to echo an argument made in *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998), more specifically, the argument that the burden of litigating in Washington would be too great for a Canadian corporation. Northbridge represents that this factor weighs strongly in their favor because they have no offices in Washington, have no license to conduct business in Washington, employ no agents in Washington, and insure no Washington residents. Northbridge also implies that litigating this case would not be reasonable because it would require travel and would force them to litigate in a foreign forum unfamiliar with the Canadian law governing the dispute. First, the parties present no arguments regarding what law governs this dispute and the Court will not make that determination at this time. Second, while litigating this case would require travel, Northbridge has been in litigation related to this matter and the underlying event in Washington State for over a year. As noted above, Northbridge accepted Mullen's

tender of defense, and this case has also been ongoing since May of 2017. Efforts related to all of these matters could be coordinated in order to lessen the burden.

Northbridge also argues that Canada has a greater interest in litigating this dispute, as the Northbridge Policy was drafted, negotiated, and executed in Alberta between two Canadian companies. Northbridge represents that the Northbridge Policy includes policy forms that are promulgated by the Alberta government. The Court agrees that Alberta has a greater interest in how the Northbridge policy is interpreted and applied. This factor weights in favor of Northbridge.

Northbridge presents no other argument regarding the remaining five factors to be considered when determining whether exercise of jurisdiction is reasonable. However, the Court notes that three of the remaining factors weigh in Plaintiffs' favor: the most efficient judicial resolution of the controversy, the importance of the forum to Plaintiffs' interest in convenient and effective relief, and the existence of an alternative forum. Following Northbridge's logic, Plaintiffs would need to bring this case against Northbridge in Alberta, Canada in order to preserve their rights. As the Alberta Court has already issued a decision on this matter, it is unclear whether Plaintiffs would be able to do so. Further, requiring Plaintiffs to begin again in a different forum, over one year into these proceedings, would not result in the most efficient resolution of this matter. Finally, Plaintiffs are residents of Washington State. They are currently litigating this matter and all related matters in Washington State; matters that Northbridge is actively involved in. All of the events giving rise to this lawsuit took place in Washington State. Therefore, the forum of this lawsuit is important to Plaintiffs' interest in convenient and effective relief. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957) (finding that residents of the requested forum state "would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable."). After weighing all of the factors above, the Court finds that Northbridge

10

fails to make a "compelling case" that exercise of jurisdiction is not reasonable. Therefore, this Court's exercise of specific jurisdiction over Northbridge is appropriate.

B. Res Judicata

"'*Res judicata* . . . bars litigation in a subsequent action of any claims [or issues] that were raised or could have been raised in the prior action.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)); *see Clements v. Airport Auth.*, 69 F.3d 321, 329–30 (9th Cir. 1995). *Res judicata* applies where there is: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002); *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).

Northbridge first asks the Court to recognize and enforce the judgment of the Alberta Court. This Court has the power to recognize and enforce foreign judgments. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1213 (9th Cir. 2006). However, Northbridge is not the plaintiff in this matter. Northbridge did not bring this claim seeking enforcement of the Alberta Court's judgment against Plaintiffs, nor do they seek enforcement of that judgment in their request for relief. Dkt. # 41. Northbridge asks that this Court decide whether Plaintiffs claims are barred by the litigation and judgment in Alberta. Should the Court decide that *res judicata* applies to bar Plaintiffs' claims, that decision would not act as declaratory judgment in Northbridge's favor or an enforcement of the Alberta Court's judgment.

The Court must now consider whether state or federal law should be applied when a party in a federal diversity case invokes the defense that *res judicata* bars a claim as a result of a foreign country's prior judgment. In the absence of a federal statute or treaty, a federal court sitting in diversity generally applies the law of recognition of the state in which it sits. *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58

11

S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Yahoo! Inc.*, 433 F.3d at 1213. While Washington has adopted the Uniform Foreign Money Judgments Recognition Act, those statutes do not apply where the judgment does not grant or deny recovery of a sum of money. RCWA § 6.40A.020. In the absence of an applicable Washington State statute, the principles of comity apply. "The doctrine of comity directs that we give full effect to foreign judgments, except in extraordinary cases." *Rains v. State, Dep't of Soc. & Health Servs., Div. of Child Support*, 98 Wash. App. 127, 134, 989 P.2d 558, 562 (1999). A foreign judgment is valid if:

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment.

*In re Estate of Toland*, 180 Wash. 2d 836, 847, 329 P.3d 878, 883 (2014) (quoting *Hilton v. Guyot*, 159 U.S. 113, 202, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895)). "A judgment is valid if the court had jurisdiction, there was notice, and the court was competent." *Id*.

The parties do not dispute that Plaintiffs had notice of the Alberta Lawsuit, or that Mrs. DeTray had notice of the related hearings. Further, Canadian courts have been recognized in the United States as "competent". *See Pickering v. Gonzales*, 465 F.3d 263, 269 (6th Cir. 2006); *see also Royal Bank of Canada v. Trentham Corp.*, 665 F.2d 515, 515 (5th Cir. 1981). Plaintiffs contend that the decision of the Alberta Court should be not recognized because it did not have personal jurisdiction over Mrs. DeTray, and the judgment entered as a result of Mrs. DeTray's default is void. In analyzing whether a court of a foreign country has acquired jurisdiction over a nonresident defendant, the Ninth Circuit has applied the American principles of jurisdictional due process. A constitutionally valid judgment is entitled to full faith and

credit as long as there is "a sufficient connection between the defendant and the forum state as to make it fair to require defense of the action in the forum, and provided that the defendant has received reasonable notice of the proceedings against him." *Bank of Montreal v. Kough*, 612 F.2d 467, 470 (9th Cir. 1980) (citing to *Kulko v. Superior Court of California*, 436 U.S. 84, 91-92, 98 S.Ct. 1690, 1696-97, 56 L.Ed. 132 (1978)) (internal quotations omitted). Plaintiffs argue that Mrs. DeTray lacked sufficient minimum contacts with the forum state because she has not been to Canada since the 1970's, she is a resident of Washington State, and she was dispatched to operate the pilot vehicle at issue in this case by a United States company. Northbridge argues that by submitting an insurance claim to Northbridge in Toronto, Ontario, Mrs. DeTray was seeking benefits under a contract entered into by two Canadian companies under the law of Alberta, and that this constitutes minimum contacts sufficient to support personal jurisdiction. Dkt. # 54.

Northbridge represents that it is not licensed to practice in Washington, has no office in Washington, has no agents in Washington, but provides coverage in North America. The argument that Mrs. DeTray placed herself under the jurisdiction of the Alberta Court by submitting a claim to Northbridge in the only way open to her is not persuasive. Following Northbridge's logic, the submission of a claim to a Canadian insurance company regardless of where the events giving rise to the claim occurred is a sufficient minimum contact to satisfy due process even where the claimant has no other contacts with that forum. While it is clear that Northbridge has a substantial connection with Canada, jurisdictional due process focuses on the relationship between the defendant and the forum, not the plaintiff. Mrs. DeTray had little to no connection to Alberta, Canada. The Court finds that the Alberta Court could not, within the restrictions of due process, exercise jurisdiction over Mrs. DeTray. Pursuant to the principles of comity, the decision in the Alberta Lawsuit would not be valid and recognized under Washington law. Therefore, it cannot serve as the basis to bar

13

Plaintiffs' claim by *res judicata.* Northbridge's Motion for Summary Judgment is **DENIED.** Dkt. # 34.

C. <u>Northbridge's Duty to Defend Plaintiffs</u>

Plaintiffs move for summary judgment of their claim for a declaratory judgment from the Court that Northbridge has a duty to defend Mrs. DeTray in the Underlying Lawsuits. Both parties agree that Washington law applies to this inquiry. Dkt. # 27 at 7; Dkt. # 38 at 10. Pursuant to Washington law, the duty to defend arises at the time an action is first brought, and is based on the potential for liability. *Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 52, 164 P.3d 454, 459 (2007). "An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id*. at 52-53 (internal citations omitted).

"[T]he duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint." *Id*. at 53; *see also Goodstein v. Cont'l Cas. Co*., 509 F.3d 1042, 1055 (9th Cir. 2007). An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." *Woo*, 161 Wash. 2d at 53. There are two exceptions to the rule that the duty to defend must be determined only from the complaint: 1) "if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend"; and 2) "if the allegations in the complaint conflict with facts known to or readily ascertainable by the insurer or if the allegations are ambiguous or inadequate, facts outside the complaint may be considered." *Id*. at 53-54. The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty. *Id*. at 54.

As noted above, three parts of the Northbridge policy provide liability insurance: the Standard Automobile Policy ("SPF No. 1"), the Commercial General Liability form

("CGL"), and the Non-Owned Automobiles form ("SPF No. 6"). Dkt. # 28 Ex. C. The CGL does not cover property damage arising directly or indirectly out of use of an automobile. Plaintiffs do not dispute that Mrs. DeTray and the driver of the commercial truck that collided with the Skagit River Bridge were operating "automobiles" as defined by the CGL form. To the extent that the Underlying Lawsuits allege property damage arising out of Mrs. DeTray's use of an automobile, that damage is not covered under the CGL form and the duty to defend is not triggered. Only one of the complaints from the Underlying Lawsuits seeks damages for injuries that are not property damage, however, that complaint does not allege facts that would establish that Mrs. DeTray is covered by the CGL. The plaintiffs in that particular Underlying Lawsuit only allege that Mrs. DeTray, through her business, G&T Crawler Service, was hired by Mullen to drive a pilot car. The complaint does not allege that Mrs. DeTray is an employee of Mullen, and therefore insured under the CGL form for any damages that are not property damage. Dkt. # 29 Ex. C.

Mullen is the named Insured for the SPF No. 1. Dkt. # 28 Ex. C. On the Declarations page of the SPF No. 1, under "Particulars of the Described Automobile," the trade name for the Described Automobile is listed as "ALL VEHICLES OWNED, REGISTERED, LEASED AND/OR OPERATED ON BEHALF OF THE NAMED INSURED." Dkt. # 28-4 at 25. The SPF No. 1 defines "the automobile" as: "The Described Automobile - an automobile, trailer or semi-trailer specifically described in the Policy or within the description of the insured automobiles set forth therein." Plaintiffs argue that the definition of "the automobile" incorporates the listed trade name for the Described Automobile on the Declarations page because it is "within the description of the insured automobiles set forth therein." Referencing Endorsement # A-019, Northbridge argues that the definition of Described Automobile incorporates the Endorsement's description of what automobiles are covered by the Auto Section of the Northbridge Policy.

15

Endorsement # A-019 is a Blanket Basis Fleet Endorsement and states that "[t]he policy shall provide Insurance with respect to all automobiles . . . which are: (i) owned by or licensed in the name of the Insured; (ii) leased [from certain lessors] for a period in excess of 30 days [; or] (iii) leased for a period in excess of 30 days under a written lease agreement from a lessor other than those listed[.]" This is quite literally a "description of the insured automobiles set forth therein." Plaintiffs do not dispute that the Auto Section identifies the applicable modifications and endorsements, one of which is Endorsement # A-019. Dkt. # 68 at 4. The trade name for a defined term, Described Automobile, is not a description of the vehicles insured under the SPF No. 1. It is exactly what it purports to be, a general trade name for the vehicles that fit under the definition of the Described Automobile. There is no indication that this trade name should act as the official definition of the Described Automobile, such that it would overrule the specific contradicting definition listed in the Auto Policy. Plaintiffs do not point to any language in the Northbridge Policy that indicates that trade names should be incorporated into definitions within the policy. All of the complaints in the Underlying Lawsuits allege that Mrs. DeTray was driving a vehicle owned by and licensed to her and Mr. DeTray. They do not allege that Mullen owned or licensed the vehicle, or that Mullen leased it.

The Declarations page of the SPF No. 6 names Mullen as the Insured for that policy. Dkt. # 28 Ex. C. Northbridge argues that the operation of Mrs. DeTray's vehicle does not qualify for coverage under the SPF No. 6 form because it does not meet the requirements of the Additional Insureds clause. The Additional Insureds clause states that the Insurer "agrees to indemnify in the same manner and to the same extent as if named herein as the Insured," employees of the Insured who drive "any automobile not owned in whole or in part by or licensed in the name of the Insured . . . or such additional insured person" or "any automobile hired or leased in the name of the Insured except an automobile owned in whole or in part or licensed in the name of such

16

| | |
|---|---|
| 1 | additional insured person." Dkt. # 28 Ex. C.  Only one of the complaints in the |
| 2 | underlying action alleges that Mrs. DeTray was an "employee and/or agent" of Mullen. |
| 3 | Dkt. # 29 Ex. A.  At least one other complaint alleges that Mrs. DeTray was an agent of |
| 4 | Mullen and was hired by Mullen, but makes no allegation that Mrs. DeTray was an |
| 5 | employee of Mullen.  Setting aside any later finding that Mrs. DeTray was an agent, at |
| 6 | least one of the complaints sufficiently alleges that Mrs. DeTray was an employee of |
| 7 | Mullen.  However, even as an alleged employee of the Insured, Mrs. Detray would not |
| 8 | qualify as an Additional Insured under the SPF No. 6 form.  While Mrs. DeTray was |
| 9 | driving a vehicle in the business of the Insured, the vehicle was owned in whole or in |
| 10 | part by or licensed in the name of the "additional insured person," or Mrs. DeTray. |
| 11 | Therefore, Mrs. DeTray does not meet the requirements for coverage as an Additional |
| 12 | Insured under part (a) of the clause.  Mrs. DeTray also does not meet the requirements |
| 13 | of part (b) of the clause.  Her vehicle was arguably hired in the name of Mullen, but |
| 14 | again, it was owned in whole or in part or licensed in her name.  Even construing the |
| 15 | allegations of the complaints from the Underlying Lawsuits liberally, there is no |
| 16 | genuine issue of material fact as to Mrs. DeTray's potential coverage.  The complaints |
| 17 | do not establish that Mrs. DeTray could "conceivably" be covered by the Northbridge |
| 18 | Policy.  Therefore, Plaintiffs' Motion for Summary Judgment is **DENIED.**  Dkt. # 27. |
| 19 | // |
| 20 | // |
| 21 | // |
| 22 | // |

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. # 34) is **DENIED**, and Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 27) is **DENIED.**

DATED this 31st day of August, 2018.

The Honorable Richard A. Jones
United States District Judge